[Sunbury, June 25, 1829.]

WILLARD *against* PARKER and another.

IN ERROR.

A suit, cannot be maintained by the supervisors of the roads, after they have gone out of office, against the county treasurer, upon an order drawn on him by the commissioners, in favour of the supervisors, or their successors in office.

It *seems*, however, that if the supervisors had worked upon the roads, to the amount of the order, or had paid others for their labour, they might have acquired such an interest in the order as would have enabled them to sustain a suit for their own use.

Where the treasurer has received money due for road taxes, he is bound to pay it to the supervisors; and has no right to make payments in county orders.

The mode of proceeding, on the part of the supervisors, pointed out by the fourth section of the act of the 6th of *April*, 1802, prescribing the manner of settling their accounts, must be strictly pursued.

On a writ of error to the Common Pleas of *Tioga* county, it appeared, that this was an action of *assumpsit*, brought by *George Parker* and *Samuel Rathbone*, for the use of *Samuel*

(Willard *v.* Parker and another.)

*Rathbone,* against *William Willard,* jun., on an order, of which the following is a copy:

" Commissioners'. Office, *Wilkesbarre, May* 17th, 1825.—Pay *George Parker* and *Samuel Rathbone,* supervisors of *Elkland* township, or their successors in office, the sum of one hundred and twenty-five dollars, and sixty-five cents, amount of the monies arising from road tax, in said township, so fast as the same comes into your hands, for the year 1825.

"To the treasurer of    $\left\{ \begin{array}{l} William \ Knox, \\ Elijah \ Styles, \end{array} \right\}$   Commissioners."
*Tioga* county
*David Lindsey,* clerk.

When the order was drawn, *Knox* and *Styles* were the commissioners of *Tioga* county; and *Parker* and *Rathbone,* the supervisors of *Elkland* township; but the plaintiffs were not in office, at the commencement of the suit. The defendant was the treasurer, and received the money arising from the road tax, for *Elkland* township, for the year 1825. This order, with others, was credited, to the amount of the road tax, for that year. After the money was received, it was demanded of *Willard* by the plaintiffs; and *Willard* off.red to pay part in county orders, and part in cash; which was refused. The question submitted to the court, was, whether the plaintiffs, on these facts, without any proof of an express promise, could recover. In the court below, the plaintiffs had judgment.

*Lewis,* for the plaintiff in error said, that the order in question, was drawn under the provisions of the seventh section of the act of the 6th of *April,* 1802, *Purd. Dig.* 721; and the first section of the act of the 30th of *March,* 1811, *Purd. Dig.* 730, which require the treasurer to pay the money received by him, for road taxes to the supervisors, for the time being. The order was not private property; and was not the foundation of a suit by the supervisors as individuals. After their term of office had expired, no suit could be maintained by them, because the interest in the order had passed to their successors.

*Williston, contra,* answered, that the plaintiffs below had settled for this order with the auditors; and, thus it had become their private property.

To this *Lewis* replied, that nothing like that appeared in the record.

The opinion of the court was delivered by

ROGERS, J.—It is contended, that the plaintiffs cannot recover, because the suit is brought for the benefit of one of the supervisors; that the order is given, to them, as the representatives of *Elkland* township, and to their successors, and, that they ceased to be supervisors before the commencement of the suit. In this decision we do not wish to be considered as commending the conduct of

(Willard *v.* Parker and another.)

the treasurer, who it is apparent, refused to pay the plaintiffs, not because in his judgment, they were not the proper parties to receive, but because they would not permit him, who had received par money for the taxes, to pay them in depreciated county orders. This spirit of speculation, at the expense of the public interest, cannot be too much condemned; and, it is proper, that it should be discouraged by the court; nor am I altogether certain, whether the conduct of the treasurer has not subjected him to an indictment, as guilty of a high misdemeanor in office. If we are governed by the face of the order, it is plain, that the term supervisors, is not merely descriptive, but intended as a designation of the character, in which they are to be entitled to the money, that is, in their representative character of supervisors of the township. The order is to *George Parker* and *Samuel Rathbone*, supervisors of *Elkland* township, or their successors in office. When, therefore, they ceased to be supervisors, their interest in the order also ceased, and became vested in their successors. And, whether the supervisors of the township be a corporation or not, does not matter, as suit may be brought (provided suit lies against the treasurer, under such circumstances,) in the name of the commissioners, for the time being; who would describe themselves, as the successors, designated and intended in the order. No person, can believe, that the commissioners intended to vest an absolute right in the supervisors to the money, to be applied by them to their own private purposes, without regard to their public duties. The order was drawn in strict conformity to the first section of the act of the 30th of *March*, 1811. I will not say, that, if the supervisors had worked on the roads, to the amount of the order, or had paid others for their labour, they might not acquire such an interest, in the order, as to enable them to sustain suit for their own use; but this I will not suppose without proof. The supervisors of the township, although not in strictness a corporation, yet, for certain purposes, are *quasi* a corporation; so that an order in favour of the supervisors, and their successors, would enable the successors to sustain suit, in their own name, for the use of the township. We particularly object to the practice of using township orders for private purposes, in payment of the private *debts* of the supervisors, or for goods purchased for their use. In every such case, we consider it a most flagrant abuse, as money, where it can be had, should be received from the treasurer, whose duty it is, under the first section of the act of the 30th of *March*, 1811, on receiving the taxes, or any part thereof, to pay over the amount to the supervisors, who shall respectively be entitled to the same; with which it is their duty to make open and repair the public roads. And this construction may prevent abuses, without any injury whatever to the *honest* supervisors; for the fourth section of the act of the 6th of *April*, 1802, particularly prescribes the manner of settling their accounts. At the election for choosing supervisors, the

(Willard *v.* Parker and another.)

electors are required to elect four capable and discreet freeholders, or inhabitants, to settle and adjust the accounts of the supervisors, whose time is about to expire.   The supervisors are required, on the 25th of *March,* yearly, or within ten days thereafter, to produce fair and clear accounts, of all such sums of money by them received, &c.   And the freeholders and inhabitants so chosen, &c., have full power to adjust, and settle such accounts, and to allow such sums and charges, as they may think reasonable.   And the section further directs, that, if there shall appear to be any money remaining in the hands of the supervisors, they shall by order in writing, &c., direct the same to be paid to the succeeding supervisors; but, in case they shall be found to be in advance, &c., the freeholders are required, to give an order to reimburse the same, as soon as a sufficient sum of money shall come into their hands.   This section clearly points out the mode of proceeding, on the part of the supervisors, which, it is the opinion of the court, should be strictly pursued.   It is manifest from this act, and the first section of the act of the 3d of *April,* 1804, the legislature intended to prevent the traffic, which appears to have taken place in township orders.   As a considerable part of the money arises from taxes on unseated lands, which are held by nonresidents, it is paid in par money; and this the treasurer is bound to pay over, as he received it, to the supervisors, to be by them faithfully expended in making, opening, and keeping in repair the public highways.   The presumption is, this course was pursued, and if so, the supervisors, by producing the order, and showing the money had not been received, would have had an allowance to that amount, and it would have been their duty to deliver over the order to their successors in office; if they were in advance, &c., they would have been entitled to an order on their successors, who would have been bound to reimburse them out of the first money received.

Judgment reversed, and a *venire facias de novo* awarded.