THE UNITED NEW JERSEY RAILROAD AND CANAL COM-
PANY AND THE PENNSYLVANIA RAILROAD COMPANY
v. THE NATIONAL DOCKS AND NEW JERSEY JUNCTION
CONNECTING RAILWAY COMPANY AND THE MAYOR
AND ALDERMEN OF JERSEY CITY.

1. Under the act of March 9th, 1893 (*Pamph. L., p.* 157), the board of
street and water commissioners of Jersey City is the proper municipal
authority to enter into contracts with railroad companies whose roads
enter or lie within the city, and said board may make such contracts
by resolution, without the concurrence of any other board, and not-
withstanding the veto of the mayor.

2. The mere vacation of a public street by a municipal board does not
involve the infringement of any private rights.

On *certiorari.*

Argued at November Term, 1894, before Justices DIXON,
MAGIE and LIPPINCOTT.

For the prosecutors, *James B. Vredenburgh.*

For the National Docks Company, *Charles L. Corbin.*

For Jersey City, *Spencer Weart* and *William D. Edwards.*

The opinion of the court was delivered by

DIXON, J.   On August 28th, 1893, the board of street and
water commissioners of Jersey City, over the veto of the acting
mayor, passed several resolutions vacating a portion of Rail-
road avenue and changing the grade of Wayne street, in order
to enable the National Docks and New Jersey Junction Con-
necting Railway Company to construct and operate its road
across Railroad avenue with greater safety to life and prop-
erty.   The resolutions were adopted as part of a contract
entered into by the city and the railway company, in supposed
pursuance of an act of the legislature approved March 9th,
1893 (*Pamph. L., p.* 157), authorizing such contracts to be

made. The prosecutors dispute the legality of these resolutions on several grounds, of which we deem it necessary to notice, specially, only three.

*First.* It is said the board of street and water commissioners is not "the proper municipal authority" under the statute mentioned.

By the city charter (*Pamph. L.* 1871, *p.* 1094), the power of vacating streets and changing grades in Jersey City was entrusted to the board of public works, and by the acts of 1889 (*Pamph. L., p.* 187) and 1891 (*Pamph. L., p.* 249), the powers of that board were transferred to the board of street and water commissioners. Because of the possession of this power, that board became the proper municipal authority to enter into contracts involving the exercise of the power.

*Secondly.* It is alleged that the concurrence of the board of aldermen, or of the board of finance, and the approval of the mayor, with attestation by the city's seal, were necessary to validate the contract intended.

The counsel for the prosecutors has not referred us to any statute making these things necessary; and we have found none. The act of 1893 calls for only "a contract," and the board may contract by resolution unless some additional solemnity be expressly required. *Jersey City* v. *Lehigh Valley Railroad Co.*, 26 *Vroom* 203.

Another objection is that, by vacating Railroad avenue, the resolutions take away the rights of the prosecutors as abutting owners, and enable the National Docks Company to occupy the property of the prosecutors without making compensation.

This, however, rests upon a mistaken view of the effect of the resolutions. The vacation of the street does not in the least impair private rights; it is only a surrender or extinction of the public easement. *Dodge* v. *Pennsylvania Railroad Co.*, 16 *Stew. Eq.* 351; *S. C. on appeal,* 18 *Id.* 366; *Read* v. *Camden*, 25 *Vroom* 347, 374.

We find no reason for denying the legality of the resolutions, and they are affirmed, with costs.